# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 24-ICA-40

_____

FILED

**November 12, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

HELEN BRADLEY,
Plaintiff Below, Petitioner

v.

OHIO COUNTY BOARD OF EDUCATION AND KATRINA LEWIS,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Ohio County

Honorable Jason A. Cuomo, Judge

Civil Action No. CC-35-2022-C-21

AFFIRMED

_____

Submitted: October 8, 2024

Filed: November 12, 2024

Mary Pat Statler, Esq.
Christopher D. Smith, Esq.
Elizabeth L. Stryker, Esq.
Bailey & Glasser, LLP
Charleston, West Virginia
Counsel for Petitioner

Thomas E. Buck, Esq.
Benjamin P. Visnic, Esq.
Bailey & Wyant, PLLC
Wheeling, West Virginia
Counsel for Respondents

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Helen Bradley ("Ms. Bradley") appeals two orders entered in the Circuit Court of Ohio County. First, she appeals the April 14, 2022, order granting the Ohio County Board of Education ("OCBOE") and Katrina Lewis' ("Ms. Lewis") (collectively "Respondents") motion to dismiss Count I, partially, and Counts II and III, entirely, as contained in Ms. Bradley's complaint. Second, she appeals the December 29, 2023, order granting summary judgment on all remaining portions of Count I, effectively dismissing the entire civil action.

Having reviewed this matter, we conclude that the circuit court was correct in granting the Respondents' motions on the basis that the statute of limitations barred relief of Count I, partially, and Counts II and III, entirely, and that the remaining portions of Count I did not allege an adverse employment action taken against Ms. Bradley. Accordingly, we affirm the April 14, 2022, and December 29, 2023, orders.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

From October of 2004 to January of 2010, Ms. Bradley worked various roles as part-time employee for the OCBOE.[1] Beginning in January of 2010 to May of 2010, Ms. Bradley served as a Title I Math Substitute at Middle Creek Elementary School and worked

---

[1] Ms. Bradley served as a substitute teacher; as an English as a Second Language teacher; and taught homebound and at-risk students during this time.

1

as a professional for the 2010 Extended School Year Program Elementary/Middle School Component from July 2, 2010, through August 2, 2010. On August 9, 2010, the OCBOE approved Ms. Bradley's appointment for the 2010-2011 school year as a First Year 205-Day Countywide Technology Integration/Library Media Specialist assigned to Warwood School. Ms. Bradley served as the Countywide Technology Integration/Library Media Specialist until May 2013. In August of 2013, Ms. Bradley was appointed as a 200-Day Fourth Grade Teacher at Middle Creek Elementary School. Ms. Bradley served as a 200-Day Fourth Grade Teacher until her retirement on October 15, 2019.

In 2017, Ms. Lewis began serving as principal at Middle Creek Elementary School.[2] According to Ms. Bradley's Complaint, on numerous occasions, Ms. Lewis called Ms. Bradley into her office to "scold" her for occurrences that Ms. Bradley believed did not warrant principal intervention. Ms. Bradley also alleges that other, younger, teachers complained about her to Ms. Lewis regarding minor classroom issues. On one occasion, Ms. Lewis allegedly angrily reprimanded Ms. Bradley in her classroom, in front of her students and colleagues, because one of Ms. Bradley's students did not hear their bus announcement and missed their bus. Ms. Lewis allegedly did not treat the other Fourth Grade Teacher, who is substantially younger than Ms. Bradley, in this manner.

---

[2] Ms. Bradley's Complaint alleges that Ms. Lewis is substantially younger than Ms. Bradley.

As principal, Ms. Lewis was responsible for teacher evaluations. Prior to Ms. Lewis' arrival, Ms. Bradley was consistently evaluated and rated as "Accomplished" in four out of five standards. In 2019, Ms. Lewis evaluated Ms. Bradley and rated her as "Emerging" in two out of five standards, which is a lower performance mark. In her evaluation, Ms. Lewis wrote, "[O]ver the past several years [Ms. Bradley] has been emerging in several areas. To assist Ms. Bradley, I would like [to] conduct observations next year (at least 4). As part of a school-wide plan there will be regular meetings with the 4th grade team to discuss curriculum and planning. Ms. Bradley is offered a mentor for the 2019-2020 school year." Ms. Bradley described this as humiliating and demoralizing. Given what Ms. Bradley describes as constant negative treatment and discriminatory conduct by Ms. Lewis, Ms. Bradley decided to apply for other teaching positions available within the school system for which she was qualified.

Ms. Bradley holds a master's degree in Elementary Education with a concentration in School and Library Media and held professional teaching certifications for Language Arts for Grades 4-8, English as a Second Language for all grade levels, Elementary Education for Grades 1-6, and Elementary Education for Grades K-6. Ms. Bradley had fifteen years of teaching experience, including nine years of experience in teaching Elementary School and English. Between 2018 to 2019, Ms. Bradley applied for over sixteen (16) positions. However, Ms. Bradley was denied a transfer for all sixteen (16) positions. According to Ms. Bradley's complaint, those positions were filled by individuals under the age of forty with less seniority and experience.

On September 30, 2019, Ms. Bradley filed a complaint with the West Virginia Human Rights Commission ("WVHRC") against OCBOE alleging age discrimination. On October 15, 2019, Ms. Bradley retired from her position as a 200-Day Elementary Teacher assigned to Middle Creek Elementary, allegedly due to the unbearable work environment created by Ms. Lewis. However, Ms. Bradley never amended her complaint with the WVHRC nor filed an additional complaint with the WVHRC alleging constructive discharge or a hostile work environment.

On August 27, 2021, the WVHRC determined that probable cause existed to believe that OCBOE had violated the West Virginia Human Rights Act ("WVHRA") in connection with Ms. Bradley's age discrimination case. On January 4, 2022, pursuant to West Virginia Code § 5-11-13(b), Ms. Bradley notified the WVHRC that she intended to pursue her claims in circuit court. The WVHRC issued Ms. Bradley a right to sue letter on January 31, 2022.

On February 4, 2022, Ms. Bradley filed her complaint in circuit court, which was within ninety (90) days of receiving notice of her right to sue from the WVHRC. Her complaint raised two causes of action against OCBOE and one cause of action against Ms. Lewis. Count I alleged a violation of the WVHRA, based upon age discrimination; Count II claimed age discrimination by Ms. Lewis in violation of the WVHRA and/or public

4

policy; and Count III raised a constructive wrongful discharge claim against OCBOE, in violation of the WVHRA and/or public policy.[3]

On March 17, 2022, Respondents filed a motion seeking partial dismissal of Count I, complete dismissal of Counts II and III, and dismissal of Ms. Lewis as a defendant. In support of their motion, Respondents argued that a portion of claims raised by Ms. Bradley in Count I and all of her claims in Counts II and III were time barred pursuant to the applicable statute of limitations. Specifically, under Count I, Respondents argued that Ms. Bradley's complaint alleged sixteen instances of age discrimination related to specific requests for transfer which were refused. However, her WVHRC complaint only included allegations related to twelve (12) specific jobs. Thus, several of the alleged instances of discrimination were not raised before the WVHRC and, thus, were not filed within the two-year statute of limitations pursuant to West Virginia Code § 55-2-12 (1959). With respect to Count II, it was argued that no claim was raised against Ms. Lewis before the WVHRC and therefore, any claim against Ms. Lewis was time barred. Finally, regarding Count III, Respondents argued that Ms. Bradley failed to raise a wrongful constructive discharge before the WVHRC and, as a result, it was also filed outside the two-year statute of limitations.

---

[3] Count I referenced sixteen (16) jobs for which Ms. Bradley was denied transfer. Each job has an affiliated reference number: Jobs 2380, 2349, 2391, 2392, 2393, 2409, 2427, 2457, 2477, 2505, 2507, 2509, 1973, 2394, 2485, and 2431.

On April 14, 2022, the circuit court granted Respondents' motion to dismiss. In its order, the circuit court determined that Counts II and III were not included in the WVHRC proceedings and that Count I included three jobs that were never pled in her WVHRC complaint. Since these allegations were never pled before the WVHRC, the court determined that they must be dismissed because they occurred more than two years before the complaint was filed. Only those claims previously raised before the WVHRC were permitted to proceed based upon the tolling provisions contained in West Virginia Code § 16B-17-13 (2024).

In addition to the issue of untimeliness, the circuit court agreed with the Respondents that Ms. Bradley had failed to state a claim upon which relief could be granted under both Counts II and III of her complaint. The circuit court found that as pled, Ms. Lewis' conduct did not establish an adverse employment action, in that the allegations against Ms. Lewis cannot establish "a significant change in employment status" as required by law. The circuit court concluded that Ms. Bradley's age discrimination claim (Count II) and her wrongful and constructive discharge claim (Count III) were each insufficient to state a *prima facie* claim, had those counts been timely filed.

On December 8, 2023, OCBOE filed a motion for summary judgment as to the remaining claims under Count I. The OCBOE argued that Ms. Bradley could not maintain any of her twelve (12) remaining employment discrimination claims because the failure to obtain a lateral transfer and the receipt of poor performance evaluations were not,

by definition, adverse employment actions. On December 29, 2023, the circuit court entered an order granting OCBOE's motion for summary judgment and dismissing the case. The circuit court determined that Ms. Bradley could not establish a *prima facie* case for any of her remaining age discrimination claims. It was determined that even though she was a member of a protected class (over forty years of age), Ms. Bradley could not establish an adverse employment action as defined under West Virginia law. It is from these orders that Ms. Bradley now appeals.

## II. STANDARD OF REVIEW

"In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). Decisions to grant or deny summary judgment are reviewed *de novo*. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). At the motion to dismiss stage, complaints are to be read liberally as required by the notice pleading standard underlying the West Virginia Rules of Civil Procedure, and the circuit court, viewing all the facts in a light most

7

favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief." *Scott Runyan Pontiac-Buick*, *Inc*., 194 W. Va. at 776, 461 S.E.2d at 522 (citing Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc*., 160 W. Va. 530, 236 S.E.2d 207 (1977)). Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based; however, a claim cannot be permitted to continue if such claim is not authorized under West Virginia law. *Id.* at 776, 461 S.E.2d at 522. With these standards in mind, we consider the issues raised on appeal.

## III.    DISCUSSION

On appeal, Ms. Bradley alleges four assignments of error across two orders. First, Ms. Bradley argues that the circuit court erred in dismissing her claim for constructive discharge. Second, she alleges the circuit court erred in its determination that she had failed to allege an adverse employment action. Third, Ms. Bradley asserts that the circuit court erred in granting summary judgment by ignoring the WVHRC's probable cause finding and the OCBOE's hiring of younger, less experienced teachers. Lastly, she argues that the circuit court erred by limiting the scope of her claimed damages in its order granting summary judgment; specifically, that the court wrongfully limited the applicability of her lost wages and emotional distress claims to her constructive discharge cause of action. After a review of the record and the applicable law, we find no merit in Ms. Bradley's assignments. Accordingly, the circuit court's decision is affirmed.

## A. Dismissal Order

On April 14, 2022, the circuit court partially dismissed Count I, specifically relating to Jobs 1973, 2431, and 2485, and fully dismissed Counts II and III, for being untimely filed and beyond the two-year statute of limitations. Ms. Bradley argues that the circuit court erroneously declined to equitably toll the statute of limitations to her constructive discharge claim. In support of her argument, Ms. Bradley asserts that she was *pro se* before the WVHRC and that her constructive discharge relates back to her age discrimination claims which were tolled by West Virginia Code § 16B-17-13 (2024) (formerly cited as 5-11-13(b)). West Virginia Code § 55-2-12 provides that:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

The statute of limitations on a claim under the WVHRA is two years. *Sesay v. Montgomery Ward & Co.*, 937 F. Supp. 563, 566 (S.D.W. Va. 1996). Accordingly, this matter is subject to a two-year statute of limitation. *See* Syl. Pt. 1, *Jones v. Trustees of Bethany College*, 177 W. Va. 168, 351 S.E.2d 183 (1986). The statute of limitations for employment discrimination cases brought to enforce rights under the WVHRA, including allegations of discrimination, begins to run from the date a plaintiff first learns of the

9

adverse employment decision. *See Metz v. E. Associated Coal, LLC*, 239 W. Va. 157, 161, 799 S.E.2d 707, 711 (2017).

Pursuant to West Virginia Code § 16B-17-13(b), a claimant is given ninety (90) days after notice of the right to sue is provided by the WVHRC to file suit against a defendant. With respect to Ms. Bradley's age discrimination claims that were before the WVHRC, the right to sue accrued once the WVHRC issued Ms. Bradley the notice of such right to sue. These statutory provisions toll, for a period of ninety (90) days, any causes of action that were before the WVHRC. The fact that her age discrimination claims were tolled during this period does not act to toll the statute of limitations with respect to her other causes of action. *Conaway v. E. Associated Coal Corp.*, 178 W. Va. 164, 168, 358 S.E.2d 423, 427 (1986). Accordingly, as to her constructive discharge claim, that cause of action accrued upon the date of her retirement, October 15, 2019. As Ms. Bradley never filed a constructive discharge claim with the WVHRC, the right to sue determination had no effect on the statute of limitations regarding such constructive discharge claim. Similarly, the transfer applications not listed in the WVHRC complaint and the claims against Ms. Lewis, which were also not included in Ms. Bradley's WVHRC complaint, were not tolled as they were never submitted to the WVHRC. As Ms. Bradley did not file her civil action until February 4, 2022, it is clear that these claims were not filed within two years of the last alleged adverse employment action.

10

Once it is determined that a cause of action appears to be barred by a statute of limitations, the analysis turns to whether a tolling doctrine applies.[4] "[S]tatutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception. It has been widely held that such exceptions 'are strictly construed and are not enlarged by the courts upon considerations of apparent hardship.'" *Adkins v. Clark*, 247 W. Va. 128, 133, 875 S.E.2d 266, 271 (2022).

In dealing with cases concerning proposed equitable exceptions to statutes of limitations, the Supreme Court of Appeals of West Virginia ("SCAWV") has shown it is unwilling to extend the applicable statutory period in order to cure filing defects that could have been avoided had the plaintiff's attorney been more conscientious in adhering to the statutory deadline. *See Perdue v. Hess*, 199 W. Va. 299, 303, 484 S.E.2d 182, 186 (1997). The ultimate purpose of statutes of limitations is to require the institution of a cause of action within a reasonable time. *See* Syl. Pt. 4, *Humble Oil & Ref. Co. v. Lane*, 152 W.Va. 578, 165 S.E.2d 379 (1969) ("Statutes of limitation are statutes of repose, the object of which is to compel the exercise of a right of action within a reasonable time.").

The application of equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and lack of prejudice to the defendant. *Adkins*, 247 W.

---

[4] Pursuant to the parties' agreement below, the discovery rule and arguments of fraudulent concealment were not at issue in this case.

Va. at 134, 875 S.E.2d at 272. While Ms. Bradley adamantly clings to equitable principles, creatively suggesting that her new allegations and causes of action should relate back to the age discrimination allegations that were before the WVHRC, such argument is without merit. Her claims before the WVHRC were based upon the numerous denials for transfers which she alleges were denied on the basis of her age. Her alleged constructive discharge claim goes beyond the scope of these allegations and her additional claims against Ms. Lewis were not included in the WVHRC proceedings. Upon her retirement, Ms. Bradley possessed a right to bring a claim for the alleged constructive discharge which did not have to wait on the conclusion of the WVHRC proceedings. Additionally, Ms. Bradley could have filed a complaint with the WVHRC for constructive discharge. However, she failed to do so. For these reasons, we affirm the circuit court's dismissal of all claims outside the scope of the WVHRC claims, as those actions were untimely. The failure of the circuit court to apply equitable tolling was not an abuse of discretion. Upon our finding that the circuit court correctly dismissed these counts, we find it unnecessary to specifically address Ms. Bradley's assignment of error relating to an alleged failure to construe the facts in the light most favorable to her with regards to the dismissal of the constructive discharge claim.

## B.    Summary Judgment Order

On December 29, 2023, the circuit court granted summary judgment in favor of the OCBOE for the remaining jobs contained in Count I. The circuit court determined that Ms. Bradley failed to allege a *prima facie* case for age discrimination, and she failed

12

to adduce evidence to overcome a legitimate, non-discriminatory reason for her non-transfer. Ms. Bradley argues that the circuit court erred when it determined that she failed to allege an adverse employment action. Additionally, Ms. Bradley argues that the circuit court erred when it determined that she suffered no damages beyond those alleged in her age discrimination claim. We find these arguments to be without merit.

### 1. Age Discrimination

In order to make a *prima facie* case of employment discrimination under the West Virginia Human Rights Act, "[T]he plaintiff must offer proof of the following: (1) That the plaintiff is a member of a protected class. (2) That the employer made an adverse decision concerning the plaintiff. (3) But for the plaintiff's protected status, the adverse decision would not have been made." Syl. Pt. 1, *Knotts v. Grafton City Hosp.*, 237 W. Va. 169, 786 S.E.2d 188 (2016) (citing Syl. Pt. 3, *Conaway v. Eastern Associated Coal Corp.*, 178 W. Va. 164, 358 S.E.2d 423 (1986)). There is no dispute that Ms. Bradley is over the age of forty (40) and is a member of a protected class. However, the circuit court determined that she was unable to show an adverse employment decision by the OCBOE. Ms. Bradley argues that the WVHRA does not require plaintiffs to suffer pecuniary harm before they can bring a claim for discrimination. Instead, Ms. Bradley asserts that being treated differently based on a protected characteristic is the central harm in a discrimination case. While we agree that a pecuniary harm is not required for an individual to sustain an

13

age discrimination action, there still must be an action which is disadvantageous to that individual.[5]

It is well settled that state courts interpret state law. *See Moore v. Harper*, 600 U.S. 1, 34, 143 S.Ct. 2065, 2088, 216 L.Ed.2d 729 (2023) (citing *Murdock v. Memphis*, 20 Wall. 590, 626, 22 L.Ed. 429 (1875)) ("State courts are the appropriate tribunals . . . for the decision of questions arising under their local law, whether statutory or otherwise."). However, the SCAWV has observed "[o]ur longstanding practice of applying the same analytical framework used by the federal courts [applying Title VII] when deciding cases arising under the [WVHRA]." *Willis v. Wal-Mart Stores, Inc.*, 202 W. Va. 413, 417, 504 S.E.2d 648, 652 (1998). Such analytical framework is of no consequence when confronted with variations in statutory language or other compelling reasons which require a different result. *Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833, 836 (N.D. W. Va. 1997). The SCAWV has also recognized that statutory interpretations involving the WVHRA, as created by our Legislature and as applied by our courts and administrative agencies, require an independent analysis by our state courts. *See Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W. Va. 91, 106, 538 S.E.2d 389, 404 (2000) ("[T]he [WVHRA] represents an

---

[5] This decision is solely limited to the pleadings before this Court. Pleadings contained in a Complaint can broaden and limit the scope and nature of allegations. The sole allegations as contained in Count I relate to the OCBOE's alleged failure to transfer Ms. Bradley based upon her age. Ms. Bradley did not allege a hostile work environment claim in Count I of her complaint or before the WVHRC.

14

independent approach to the law of disability discrimination that is not mechanically tied to federal disability discrimination jurisprudence.").

With this framework in mind, West Virginia has consistently defined "adverse employment action" as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision which causes significant change in benefits. *See*, *e.g.*, *Wilson v. Arcelormittal Weirton, LLC*, No. 5:19-CV-254, 2021 WL 612405, at *3 (N.D.W. Va. Jan 14, 2021). Title VII specifically prohibits action which would "deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." *See Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). When discussing whether an action has materially adverse effects, it depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances." *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71, 126 S.Ct. 2405, 2417, 165 L.Ed.2d 345 (2006) (citations omitted). However, as discussed in *Stewart v. Union Cty. Bd. of Educ.*, 655 F. App'x. 151 (3d Cir. 2016), "[e]mployment actions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." 655 F. App'x. at 157.

Ms. Bradley argues that the recent United States Supreme Court decision, *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S.Ct. 967, 218 L.Ed.2d 322 (2024), has removed any requirement to show that the allegedly discriminatory action produced a significant employment disadvantage. In *Muldrow*, a female police officer brought action against the city that employed her, alleging sex discrimination in violation of Title VII after she was transferred and replaced with a male officer. While Muldrow's rank and pay remained the same in the new position, her responsibilities, perks, and schedule did not. After the transfer, Muldrow no longer worked with high-ranking officials on the departmental priorities lodged in the Intelligence Division, instead supervising the day-to-day activities of neighborhood patrol officers. She also lost access to an unmarked take-home vehicle and had a less regular schedule involving weekend shifts. The Supreme Court held that to make out a Title VII discrimination claim, a transferee does not have to show that the harm incurred was significant, serious, substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.

While we agree with Ms. Bradley that under Title VII discrimination claims, one is not required to show the employment disadvantages were significant, the circuit court's decision in this case is not contrary to the principles contained in *Muldrow*. First, *Muldrow* deals with the actual transfer of an employee resulting in a change of employment terms. Second, *Muldrow* is a case where a transfer was done without application or consent, placing Ms. Muldrow in a position for which she did not apply or anticipate. Here, Ms.

16

Bradley applied for lateral employment opportunities; however, she remained in the same position and with the same benefits as previously conferred. Many jurisdictions continue to recognize the distinction between *Muldrow* and a failure to transfer case. *See Cavanaugh v. Wal-Mart Stores E., LP*., No. 3:22-CV-1908, 2024 WL 2094010, at *4 (M.D. Pa. May 9, 2024) ("It is well settled that a lateral transfer, or failure to be given the same, is not a materially adverse employment action sufficient to establish a *prima facie* case of employment discrimination." (internal citation omitted) "*Muldrow* involved an employee's involuntary job transfer, while the present case involves an employee's request for a voluntary job transfer. As such this new authority is not applicable to the present case and does not make the denial of Plaintiff's request an adverse employment action."); *see also Preciado v. Recon Sec. Corp.*, No. EP-23-CV-00052-RFC, 2024 WL 3512081, at *3 (W.D. Tex. July 23, 2024) (After *Muldrow*, it's clear that a transfer does change the compensation, terms, conditions, or privileges of employment. However, with failure to transfer cases, "the question of whether the alleged employment action affected a term, condition, or privilege of employment still exists.").

Assuming the applicability of *Muldrow*, the Supreme Court made it abundantly clear that while a person is not required to show that a transfer caused a "significant" employment disadvantage, there still must be a showing of some injury respecting such individual's employment terms or conditions. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359, 144 S.Ct. 967, 977, 218 L.Ed.2d 322 (2024). A transfer, or

17

as here the lack thereof, must leave the employee worse off, but need not have left her significantly so. *Id.*; *see also Hamilton v. Norristown State Hosp.*, No. CV 23-4068, 2024 WL 3623521, at *7 (E.D. Pa. Aug. 1, 2024) ("[T]he Supreme Court's finding in *Muldrow* that even an ostensibly 'lateral' transfer (e.g., even one that does not result in a change in 'rank' or 'pay') can constitute an adverse employment action so long as some 'disadvantageous' change 'in an employment term or condition' has resulted."). In this matter, Ms. Bradley did not satisfy this required showing.

As discussed in *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995), circuit courts are to be particularly careful in granting summary judgment in employment discrimination cases. A motion for summary judgment shall be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). A fact is material if it could affect the outcome of the dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986); *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "The task of a court at the summary judgment stage is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Conrad v. ARA Szabo*, 198 W. Va. 362, 370, 480 S.E.2d 801, 809 (1996) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212). When reviewing claims of discrimination at this stage, "the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidentiary

18

materials of the record were viewed in the light most favorable to the employee, no reasonable jury could find for the plaintiff." *Conrad v. ARA Szabo*, 198 W. Va. 362, 370, 480 S.E.2d 801, 809 (1996). Based on the record and the pleadings in this case, we find that the circuit court properly considered the undisputed facts and testimony before it.

The circuit court must consider all exhibits and affidavits and other evidence submitted by both parties on a motion for summary judgment under Rule 56 of the West Virginia Rules of Civil Procedure. Ms. Bradley admitted that these job opportunities were simply "lateral moves" and that they involved no reduction of pay and no more than speculative changes in working conditions. Lateral transfers "involving no reduction in pay and no more than a minor change in working conditions" are not adverse employment actions. *Keen v. Merck Sharp & Dohme Corp*., 819 F. App'x 423, 426 (7th Cir. 2020). When the only action the employee experienced was a change to "an essentially equivalent job" that she "did not happen to like as much" such change is not an adverse action. *Id.* at 427. While the refusals to transfer might have been hurtful or disappointing, this without more does not "justify trundling out the heavy artillery of . . . antidiscrimination law." *See Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd*, 704 F. App'x 164, 168–69 (3d Cir. 2017). A *Muldrow* analysis does nothing to change these established principles of law when dealing with a summary judgment motion. Ms. Bradley has failed to submit evidence supporting any finding of an adverse employment action. Having determined that Ms. Bradley failed to show an adverse employment action, we find it unnecessary to review the

discussion of evidentiary inferences and the arguments involving the legitimate non-discriminatory reasons for the failure to transfer.

## 2. Damages

Lastly, we address Ms. Bradley's argument involving the circuit court's wrongful limitation on the applicability of her claim for lost wages and emotional distress. The circuit court, in reviewing the evidence presented, considered Ms. Bradley's claims for lost wages and emotional distress to be inextricably intertwined with her constructive discharge allegations, which were dismissed as untimely. After a review of the record, the circuit court was correct in doing so. Ms. Bradley's allegation was that she suffered these damages as a result of the OCBOE's failure to transfer and having to remain at her current school dealing with the alleged discriminatory treatment of Ms. Lewis. In support, Ms. Bradley's expert opines that she was forced to quit because of the hostile work environment, which is a claim Ms. Bradley did not allege in her complaint. We find these tort damages to be consumed by her wrongful constructive discharge claim which, as was discussed above, was appropriately dismissed by the court below.

As for the allegations regarding back pay, the record clearly indicates that such damages are not present, as Ms. Bradley's transfers were lateral in nature and would not have resulted in a pay increase. Further, an individual alleging age discrimination can be entitled to tort damages beyond lost wages; however, those damages must be actual

20

damages and remain contingent upon the finding of discrimination. *See Bishop Coal Co. v. Salyers*, 181 W. Va. 71, 80, 380 S.E.2d 238, 247 (1989). In this matter, such damages' claims were appropriately disposed of by the circuit court.

## IV.    CONCLUSION

For the foregoing reasons, the April 14, 2022, order granting partial dismissal and the December 29, 2023, order granting summary judgment are hereby affirmed.

Affirmed.